IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRACEY D. SACKS | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-21-968 |
| BOARD OF EDUCATION OF BALTIMORE COUNTY, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Tracey D. Sacks ("Sacks" or "Plaintiff"), brings this three count employment discrimination case against the Board of Education of Baltimore County (the "Board" or "Defendant"), seeking monetary and injunctive relief for assorted violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601, *et seq.*[1] Sacks claims that she was the victim of discrimination based on her hearing loss during her employment with the Board as a second-grade teacher from 2009-2012 and 2015-2017. (ECF No. 1 ¶¶ 10, 11, 12, 13, 16, 18, 33, 44, 46.) Now pending is Defendant's Motion to Dismiss (ECF No. 8). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Defendant's Motion to Dismiss (ECF No. 8) is GRANTED.

---

[1] Sacks does not oppose dismissal of Count II brought under the Maryland FEPA as it was not timely filed.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiff Tracey D. Sacks is a resident of Owings Mills, Maryland. (ECF No. 1 ¶ 1.) Defendant Board of Education of Baltimore County administers a school district in Maryland with a student enrollment in excess of 110,000 students across 175 school and program locations. (*Id.* ¶ 2.) The Board oversees the 25th largest school system in the United States and the third largest in Maryland. It employs over 17,000 people. (*Id.*) Sacks began working for the Board as a second-grade teacher at Randallstown Elementary School in August 2008. (*Id.* ¶ 5.) Sacks suffers from sensorineural hearing loss in both ears which she claims makes it difficult for her to hear speech and discern the origin of sounds. (*Id.* ¶ 6.) As a result, Sacks uses hearing aids. (*Id.*)

At the beginning of the 2009-2010 school year, Sacks requested accommodations for her hearing loss. She asked to be allowed to arrange the chairs in her classroom in such as way as to be able to see the faces of the students and to be provided a teacher's aide. (*Id.* ¶¶ 7,8.) Sacks claims that soon after making the request for accommodations, she became the victim of harassment and discrimination by the Principal at Randallstown Elementary School, received unsatisfactory performance evaluations, and was placed on a performance assistance plan though her performance before requesting accommodations had been satisfactory. Sacks claims that she reported her concerns of harassment and discrimination to the Board, but that the Board took no remedial action. (*Id.* ¶¶ 9-11.)

Sacks claims that she was forced to resign on June 30, 2012 because she had received two unsatisfactory annual performance ratings. On August 21, 2012, she filed a disability discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶¶ 12, 13.) Upon denial of that complaint, on September 19, 2013, Sacks filed a lawsuit against the Board in the Circuit Court for Baltimore County. (*Id.* ¶ 14.) In January 2015, the parties resolved the dispute by settlement, the terms of which included the reinstatement of Sacks as a classroom teacher for second-grade students, effective August 17, 2015. (*Id.* ¶ 15, 16.) The terms of the settlement also required the Board and Sacks to take immediate steps to engage one another in the process of addressing Sacks' request for accommodations. (*Id.* ¶ 16.) Pursuant to the settlement agreement, Sacks promptly provided the Board's Equal Employment Opportunity ("EEO") Office with documentation to support her request for accommodations. (*Id.* ¶ 17.)

Sacks, however, claims that the Board failed to provide medically necessary accommodations for her hearing loss. For example, she claims that under the agreement, the Board was to make every effort to assign Sacks to a school near her Owings Mills Home, yet in July 2015, the Board placed her at Bear Creek Elementary, a school in Dundalk across the County from Owings Mills. (*Id.* ¶¶ 18-21.) Sacks also claims that the agreement required the Board to provide her with meaningful curriculum training, but that instead the Board merely provided voluminous printouts of training presentation documents and refused to reimburse her for an online course she took to remedy the Board's alleged training failures. (*Id.* ¶¶ 22-25.) Sacks also claims that she was not permitted to shadow a teacher, not provided an FM listening system to accommodate her hearing loss, and not provided with a teaching assistant

to assist with certain tasks. (*Id.* ¶¶ 26,27,29.) Sacks also claims that the Board refused to transfer her to a resource position, which would have allowed Sacks to work with smaller groups of students in a quieter environment. (*Id.* ¶¶ 30-32.)

In October 2016, Sacks met with the Board's EEO Officer, Assata Peterson, to discuss her concerns and make a complaint about the Board's failure to accommodate Sacks' hearing loss. (*Id.* ¶ 33.) She claims she was informed that she would not be provided an assistant for an FM system. (*Id.* ¶ 34.) In January 2017, the Board requested documentation from Sacks regarding her request to be placed in a resource position. On February 23, 2017, Ms. Peterson confirmed that she had received Sacks' responsive medical records and request for accommodation. (*Id.* ¶¶ 36, 37.) On March 3, 2017, Sacks claims that Ms. Peterson responded by informing her that on the basis of the documentation she had submitted, Sacks would not be able to work in the classroom and that the Board was unable to accommodate her. (*Id.* ¶ 38.)

Sacks claims that on March 23, 2017, her principal informed her that she needed to contact the executive director of the Board's Office of Risk Management, Dr. Fran Allen. She contends that she was forced to leave the classroom in the middle of a lesson, and Dr. Allen informed her that she was "dangerous" and "a risk to students because of her disability" and that as a result, Sacks needed to leave the classroom immediately. (*Id.* ¶ 39.) Sacks claims that she was forced to exhaust sick leave for the rest of the school year because the Board offered her only "meaningless" alternatives to her teaching position, such as driving a bus, working in a cafeteria, or answering phones in an office. Sacks claims that she was forced to file for disability retirement. (*Id.* ¶¶ 42-44.)

On April 4, 2017, Sacks filed a disability discrimination charge with the EEOC and the Maryland Commission on Civil Rights. (*Id.* ¶ 46.) On January 14, 2021, the EEOC once again denied her claim and issued Sacks a Right to Sue Letter. Sacks then filed her complaint with this Court on April 19, 2021. (*Id.* ¶ 47.)

**STANDARD OF REVIEW**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

### I.   Americans with Disabilities Act Failure to Accommodate Claims (Count I)

Sacks brings suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. As relevant here, the ADA provides that no employer may "discriminate against a qualified individual on the basis of disability in regard to job application procedures, . . . hiring, advancement, or discharge . . . , employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). As a threshold matter, Plaintiff's discrimination claims require her to demonstrate that she is within the ADA's protected class, requiring that: (1) she had a disability at the time of the adverse action; and (2) she was qualified to perform the essential functions of her position. *Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 622 (D. Md. 2014); *see, e.g.*, *Haulbrook v. Michelin North Am.*, 252 F.3d 696, 702 (4th Cir. 2001) (wrongful discharge); *Rock v. McHugh*, 819 F. Supp. 2d 456, 473 n.13 (D. Md. 2011) (hostile work environment); *Evans v. Potter*, RDB-02-4043, 2003 WL 24085317, at *4 (D. Md. 2003) (reasonable accommodation). The ADA defines "disability" as: "(1) 'a physical or mental impairment[2] that substantially limits one or more major life activities'

---

[2] Applicable regulations define "physical or mental impairment" to include "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). Whether an individual is "substantially limited" requires an "individualized assessment," *id.* § 1630.2(j)(1)(iv), evaluating "as compared to most people in the general population, the condition under which the individual performs the major life activity; the manner in which the individual performs the major life

(the 'actual-disability' prong); (2) 'a record of such impairment' (the 'record-of' prong); or (3) 'being regarded as having such an impairment' (the 'regarded-as' prong)." *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014); *see* 42 U.S.C. § 12101(1). A "qualified individual" includes: "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(a)(8).[3]

Plaintiff alleges the Board failed to accommodate her bilateral sensorineural hearing loss. The ADA defines discrimination to include a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(a). A failure to accommodate claim requires Plaintiff to plead: "'(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodation.'" *Wirtes v. City of Newport News*, 996 F.3d 234, 238–39 (4th Cir. 2021) (citation omitted). But "[n]ot every job-related request by a disabled employee that is denied by her employer will subject the employer to liability for failure to provide a reasonable accommodation." *Fierce v. Burwell*, 101 F. Supp. 3d 543, 550 (D. Md.

---

activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity." *Id.* § 1630.2(j)(4)(i).

[3] The "essential functions" of an employment position are defined by regulation as the "fundamental job duties" of the position. 29 C.F.R. § 1630.2(n)(1). "A job function may be considered essential because, among other reasons, the position exists to perform that function, there are a limited number of employees to whom that function can be assigned, or the function is so specialized that the employee was hired specifically to perform it." *Hill v. Verizon Md., Inc.*, No. RDB-07-3123, 2009 WL 2060088, at *9 (D. Md. July 13, 2009); *see also* 42 U.S.C. § 12111(8) (instructing courts to consider the employer's judgment regarding essential functions, and look to any written job description); 29 C.F.R. §§ 1630.2(n)(1)–(n)(2) (providing factors for a court to examine when determining whether a job function is essential).

2015). Rather, Plaintiff must show "a causal relationship between the disability and the requested accommodations." *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997); *accord Kande v. Dimensions Health Corp.*, No. GJH-18-2306, 2020 WL 7054771, at *8 (D. Md. Dec. 2, 2020).

### A. Acts Alleged to Have Occurred on or before June 8, 2016

The ADA expressly adopts the administrative exhaustion provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), codified, as amended at 42 U.S.C. §§ 2000e-5, et seq., which requires the plaintiff to file a charge of discrimination with the EEOC within 180 days after the occurrence of an alleged unlawful employment practice. 42 U.S.C. § 12117(a); *Krouse v. Johns Hopkins HealthCare*, LLC, RDB-18-1838, 2019 WL 979298, at *1 n.2 (D. Md. Feb. 28, 2019). That limitations period is extended to 300 days if the state in which the discrimination. takes place has its "own law prohibiting discrimination and an agency enforcing the law." *Nye v. Roberts*, 159 F. Supp. 2d 207, 210 (D. Md. 2001). Maryland is a deferral state. *EEOC v. Hansa Products, Inc.*, 844 F.2d 191, 192 n.3 (4th Cir. 1988) (citing 29 C.F.R. § 1601.74). Accordingly, Sacks was required to submit a charge of discrimination within 300 days of the actions giving rise to her ADA claims.

Any discriminatory acts occurring before the 300 days prior to the filing of a Charge may not be considered as the basis for a claim of discrimination unless they are "related to a timely incident as a 'series of separate but related acts' amount to a continuing violation." *Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997) (quoting *Jenkins v. Home Ins. Co.*, 635 F.2d 310, 312 (4th Cir. 1980) (per curiam)). As this Court has explained, hostile work environment claims and claims of "discrete acts" of discrimination differ for these purposes. *Allen v. Discovery Commc'ns, LLC*, PWG-15-1817, 2016 WL 5404558, at *5 (D. Md. Sept. 28, 2016). In

*Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the United States Supreme Court determined that, unlike hostile work environment claims, claims of "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. at 113.

To the extent Sacks argues that the alleged incidents of discrimination that took place on or before June 8, 2016 were part of a continuing violation that stretched into the applicable time period, the Fourth Circuit noted in *Williams v. Giant Food, Inc.,* 370 F.3d 423, 429 (4th Cir. 2004) that such an "argument [has been] foreclosed" by the Supreme Court's ruling in *National Passenger Railroad Corporation v. Morgan, supra.* In *Morgan,* the Court "makes clear that unless the plaintiff alleges a hostile work environment ..., each instance of discrimination is a discrete act." *Szedlock v. Tenet,* 61 Fed. Appx. 88, 93 (4th Cir. 2003). The Court held that discrete acts of discrimination "are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Morgan,* 536 U.S. at 113. Sacks' "failure to accommodate" claims are claims that the Supreme Court explicitly found to be based on "easy to identify" discrete acts. *Id.* at 114. Thus, the continuing violation theory is not applicable to any of Sacks' claims, and, therefore, only those "failure to accommodate" claims that arose within the appropriate administrative time period, i.e., after June 8, 2016, remain viable. *Id.*; *see also Raiford v. Maryland Dep't of Juv. Servs.*, DKC-12-3795, 2014 WL 4269076, at *7 (D. Md. Aug. 28, 2014) ("Courts that have analyzed the [continuing violation] doctrine in connection with failure to accommodate claims have concluded that the doctrine does *not* apply."); *Harrison v. Gov't Emps. Ins. Co.*, PX-19-1235, 2021 WL 391700, at *5 (D. Md. Feb. 4, 2021) ("As made clear in *National R.R. Passenger Corporation v. Morgan*, an employee must file a charge of discrimination within the

9

appropriate limitations period as to each discrete act of discrimination that occurred.") (citing *Morgan*, 536 U.S. 101, 122 (2002)).

In her complaint, Plaintiff alleges the following discrete acts of alleged disability discrimination and failure to accommodate that occurred prior to June 8, 2016: (a) her assignment to Bear Creek in July 2015 (ECF No. 1 ¶¶ 19-21); (b) the Board's failure to provide Plaintiff with meaningful curriculum training in mid-February 2015 *(Id.* ¶¶ 22-25); (c) the Board's failure to allow Plaintiff to shadow a second grade teacher in mid-February 2015 (*Id.* ¶ 26); (d) the Board's failure to provide Plaintiff with an FM listening system during the 2015-2016 school year (*Id.* ¶ 27); (e) the Board's removal of Plaintiff's assistant during the 2015-2016 school year (*Id.* ¶ 29); and (f) the Board's failure to assign Plaintiff to a resource teaching position sometime prior to the 2016-2017 school year (*Id.* ¶¶ 30-32). Each of these acts falls outside of the 300-day limitations period, and any ADA claims based on these acts are therefore untimely. Accordingly, Count I is DISMISSED as to any discrete acts of alleged discrimination and failure to accommodate that occurred on or before June 8, 2016.

**B.     Acts Alleged to Have Occurred after June 8, 2016**

Plaintiff's ADA discrimination and failure to accommodate claims as to discrete acts that took place within the 300-day limitations period are also subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff does not state a claim for which relief may be granted. As stated above, a failure to accommodate claim requires Plaintiff to plead: "'(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make

such accommodation.'" *Wirtes v. City of Newport News*, 996 F.3d 234, 238–39 (4th Cir. 2021) (citation omitted). In this case, Plaintiff alleges that in October 2016 she met with the Board's EEO officer Assata Peterson to "register a complaint on the basis of the on-going failure to accommodate Ms. Sacks." (ECF No. 1 ¶ 33.) She also alleges that she "was informed that no assistant for FM system would be provided to her. (*Id.* ¶ 34.) Plaintiff also alleges that on March 3, 2017, Ms. Peterson informed her that her medical documentation would not permit her to work in a classroom and that the Board was unable to accommodate her. (*Id.* ¶ 38.) While Plaintiff has adequately pled that she has bilateral hearing loss and that the Board had notice of her disability, Plaintiff's claim fails under the third and fourth elements of a failure to accommodate claim. To survive a motion to dismiss, Plaintiff must plead sufficient facts to show that with reasonable accommodation, she could perform the essential functions of her position and that the Board refused to make such accommodation. As to the alleged discrete acts of discrimination that took place after June 8, 2016, Plaintiff does not specify which requests for accommodation were made, when they were made, how they were made, or how the accommodations would have enabled her to perform the essential functions of her classroom teaching position. Therefore, Plaintiff has not alleged sufficient facts to state a plausible claim for relief. Accordingly, Count I is DISMISSED as to any discrete acts of alleged discrimination and failure to accommodate that occurred after June 8, 2016.

## II.  Maryland Fair Employment Practices Act Claim (Count II)

Claims brought under the Maryland FEPA are subject to a two-year statute of limitations period. *See Bales v. Md. Judiciary/Administrative Office of the Courts*, No. 15-cv-03293-JFM, 2016 U.S. Dist. LEXIS 161581, at *19-21 (D. Md. Nov. 21, 2016); Md. Code Ann., State

11

Gov't § 20-1013(a)(3) (the civil action must be "filed within 2 years after the alleged unlawful employment practice occurred"). Since Plaintiff filed this suit on April 19, 2021, any claim of unlawful employment practice she could have timely asserted against the Board would had to have been brought for discrete acts that occurred on April 19, 2019 or later. The complaint contains no allegations of discrete acts of unlawful employment practices within the applicable timeframe. Plaintiff does not oppose the dismissal of Count II. (ECF No. 11 at 1 n.1.) Accordingly, Count II of the complaint is DISMISSED.

### III. Americans with Disabilities Act Retaliation Claim (Count III)

Plaintiff's ADA retaliation claim likewise fails. The Americans with Disabilities Act's anti-retaliation provision prohibits "discrimination against any individual because she has opposed any act or practice made unlawful by" the ADA. 42 U.S.C. § 12203(a). Unlike Sacks' other pending claims, a retaliation claim under the ADA does not require the plaintiff to allege that she has a disability. To state a claim of retaliation, Sacks must allege that: (1) she engaged in a protected activity; (2) Defendant took an adverse action against her; and (3) a causal connection exists between the protected activity and the adverse action. *See Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001).

A denial of a request for accommodation may not on its own form the basis of a retaliation claim under the ADA. As Judge Blake of this Court has recently held,

> Notably, though the denial of a request for accommodation may form the basis for a retaliation claim, such a denial does not by itself support a claim of retaliation. *Buie v. Berrien*, 85 F. Supp. 3d 161, 178 (D.D.C. 2015); *see also Floyd v. Lee*, 968 F. Supp. 2d 308, 334 (D.D.C. 2013). In the context of an ADA claim, the court in *McClain v. Tenax Corp.* explained that "the mere denial of a request for a reasonable accommodation cannot be an adverse employment action giving rise to a separate ADA retaliation claim" lest "every time an employee was denied a requested accommodation, he would be able to 'double dip' by

12

asserting both the ADA failure-to-accommodate and ADA retaliation claims." 304 F. Supp. 3d 1195, 1206-07 (S.D. Ala. 2018).

*Johnson v. Md. Transit Admin.*, Civil Action No. CCB-19-2523, 2021 U.S. Dist. LEXIS 39145, at *15-16 (D. Md. Mar. 2, 2021).

In this case, Plaintiff alleges that she "engaged in protected activity under ADA when she complained to [the Board] about the illegal workplace discrimination and failure to accommodate" and that "[a]fter filing her disability discrimination complaints . . . was subjected to adverse action when the [Board] failed to accommodate her and discharged her for reasons that are pretextual." (ECF No. 1 ¶¶ 67-68.) Plaintiff further contends that the "adverse actions" taken by the Board were "causally connected to her disability complaints." (*Id.* ¶ 69.) On their face, Plaintiff's allegations in support of her retaliation claim are insufficient. First, the Board's denial of Plaintiff's requests for accommodation cannot on its own form the basis of a separate ADA retaliation claim. Second, Plaintiff has again failed to plead her allegations with sufficient particularity as to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.[4] Accordingly, Count III of the complaint is DISMISSED.

---

[4] To the extent Plaintiff contends that in retaliation the Board "discharged her for reasons that are pretextual," the complaint reflects that Plaintiff was not actually discharged. Instead, she filed for disability retirement. (ECF No. 1 ¶ 44.) To the extent Plaintiff alleges a constructive discharge, Plaintiff has failed to plead facts that make it plausible that the Board made her "working conditions intolerable and thereby forced [her] to quit." *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 716 (D. Md. 2013).

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED this 9th day of November, 2021, that Defendant Board of Education of Baltimore County's Motion to Dismiss (ECF No. 8) is GRANTED, and Sacks' Complaint is DISMISSED WITH PREJUDICE.

A separate order follows.

_____/s/_____
Richard D. Bennett
United States District Judge